CASE NO. 23-11143

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

ANYA WEATHERLY

Plaintiff/Appellant,

v.

ABC LEGAL SERVICES, LLC,

Defendants/Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No. 19-cv-23678-DPG

_____

**APPELLEE'S ANSWER BRIEF**

_____

**TRIPP SCOTT, P.A.**
*Attorneys for Defendant/Appellee*
110 SE 6th Street, 15th Floor
Fort Lauderdale, Florida 33301
Phone: (954) 525-7500
Fax: (954) 765-8475
SETH J. DONAHOE
sjd@trippscott.com
Florida Bar No.: 1004133
JENNIFER H. WAHBA
Florida Bar No.: 1010093
jmh@trippscott.com

*Weatherly v. ABC Legal, Inc., et al.*                                        Case No. 23-11143

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

I hereby certify under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 that the following named persons and entities have an interest in the outcome of this appeal:

A.     ABC Legal Services LLC, a Washington limited liability company, formerly known as ABC Legal Services Inc., a Washington Corporation, Defendant/Appellee. Of note, on June 19, 2019, ABC Legal, Inc. effectuated a statutory conversion under section 23B.09.030 of the Revised Code of Washington (2023). Section (1) of 23B.09.030 provides: "An entity that has been converted pursuant to this chapter is, for all purposes of the laws of the state of Washington, deemed to be the same entity that existed before the conversion and, unless otherwise agreed or as required under applicable non-Washington law, the converting entity is not required to wind up its affairs or pay its liabilities and distribute its assets, and the conversion is not deemed to constitute a dissolution of the converting entity." Wash. Rev. Code. § 23B.09.030(1). Thus, ABC Legal Services, LLC (Washington) is the same entity as ABC Legal Services, Inc. (Washington), and is the only entity that previously employed Plaintiff/Appellant.

B.     ABC Legal Services, LLC, a Florida limited liability company, is an entity that appears to have been mistakenly listed by Plaintiff/Appellant in the underlying district court proceedings at one point. The Defendant/Appellee that

*Weatherly v. ABC Legal, Inc., et al.*                                    Case No. 23-11143

employed the Plaintiff/Appellant is ABC Legal Services, LLC (Washington), described above, not ABC Legal Services, LLC (Florida). Undersigned is unaware of whether ABC Legal Services, LLC (Florida) was ever served with the underlying action in the district court, and believes ABC Legal Services, LLC (Florida) has no interest in the outcome of this appeal.

C.      ABC Legal, Inc., the name of an entity that also appears to have been mistakenly listed by Plaintiff/Appellant in the district court proceedings at one point. ABC Legal, Inc. appears to be a scrivener's error of Defendant/Appellee's former entity name, ABC Legal Services, Inc. (Washington). Undersigned has notified Plaintiff/Appellant of the scrivener's error, and believes ABC Legal, Inc. has no interest in the outcome of this appeal.

D.      Donahoe, Seth J., attorney for Defendant/Appellee.

E.      Donald R. McCoy, PA, law firm for Plaintiff/Appellant.

F.      Gayles, Darrin P., United States District Court Judge for the Southern District of Florida.

G.      Local Counsel, LLC, the parent entity of Defendant/Appellee, ABC Legal Services LLC, a Washington limited liability company.

H.      McCoy, Donald R., attorney for Plaintiff/Appellant.

I.      Otazo-Reyes, Alicia M., United States Magistrate Judge for the Southern District of Florida.

*Weatherly v. ABC Legal, Inc., et al.*                                    Case No. 23-11143

J.      Tripp Scott, P.A., law firm for Defendant/Appellee.

K.      Wahba, Jennifer H., attorney for Defendant/Appellee.

L.      Weatherly, Anya, an individual, Plaintiff/Appellant.

I also certify that no parent corporation or publicly traded corporation owns

10% or more of any of Defendant/Appellee's stock, or has an interest in the outcome

of this appeal.

/s/ Seth J. Donahoe
*Counsel for Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, ABC Legal, respectfully submits that this appeal is not appropriate for oral argument. The facts and legal arguments are adequately presented in the briefs and record, and are guided by well-settled governing law, such that the Court's decision-making process will not be significantly aided by oral argument.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF THE ISSUES....................................................................1

STATEMENT OF THE CASE....................................................................2

    A.    Nature of the Case ...................................................................2

    B.    Statement of Facts ...................................................................3

        1.    ABC Legal, and its Policies and Procedures .............................3

        2.    Ms. Weatherly's Employment ...................................................5

        3.    The EEOC Charge of Discrimination and District Court Proceedings ...................................................................9

    C.    Standard of Review ...........................................................15

SUMMARY OF THE ARGUMENT ....................................................16

ARGUMENT ...................................................................18

    I.    The district court properly applied the plausibility pleading standard, rather than the notice pleading standard that was abrogated sixteen years ago, and dismissed Ms. Weatherly's hostile work environment claims because she failed allege sufficient facts to support her claims ...................................................................18

    II.    The district court correctly granted summary judgment on Ms. Weatherly's national origin claims because Ms. Weatherly failed to exhaust her administrative remedies, and, regardless, summary judgment is appropriate on the national origin claims because Ms. Weatherly did not suffer an adverse employment action necessary to support a *prima facie* case of discrimination of any type...................................................................22

A.   Ms. Weatherly did not exhaust her administrative remedies prior to filing her national origin discrimination claims because her Charge of Discrimination did not allege facts that could be construed to raise a national origin claim ................................. 23

B.   Even if Ms. Weatherly had exhausted her administrative remedies, summary judgment should not be reversed because Ms. Weatherly failed to establish a *prima facie* case of discrimination .............................................................. 25

III.   The district court properly entered summary judgment on Ms. Weatherly's race discrimination and retaliation claims because Ms. Weatherly failed to establish a *prima facie* case of racial discrimination or retaliation ................................................................. 26

A.   Ms. Weatherly did not suffer an adverse employment action ....................................................................................... 27

B.   Ms. Weatherly failed to establish that she was disparately treated ..................................................................... 31

C.   The district court correctly granted summary judgment on Ms. Weatherly's retaliation claims because Ms. Weatherly did not suffer an adverse employment action ......... 34

D.   This Court should affirm the district court's order granting summary judgment on all the discrimination and retaliation claims because Ms. Weatherly failed to present sufficient to create a genuine issue of material fact ..................................................................................... 35

CONCLUSION ........................................................................................ 39

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AIM Recycling of Fla., LLC v. Metals USA, Inc.,*
    Case No. 18-cv-60292, 2020 WL 209860 (S.D. Fla. Jan. 13, 2020) ............36

*Allen v. Tyson Foods,*
    121 F.3d 642 (11th Cir. 1997) .................................................... 11, 12, 13, 19

*Am. Dental Ass'n v. Cigna Corp.,*
    605 F.3d 1283 (11th Cir. 2010) ....................................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................... 16, 20, 21

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................... 16, 20, 21

*Burlington N. & Santa Fe Ry. Co. v. White,*
    548 U.S. 53 (2006)........................................................................................35

*Burroughs v. Corey,*
    647 F. App'x 967 (11th Cir. 2016)...............................................................20

*Carithers v. Mid-Continent Cas. Co.,*
    782 F.3d 1240 (11th Cir. 2015) ....................................................................15

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)......................................................................................23

*Chapter 7 Tr. v. Gate Gourmet, Inc.,*
    683 F.3d 1249 (11th Cir. 2012) ....................................................................34

*Conley v. Gibson,*
    355 U.S. 41 (1957)........................................................................................20

*E.E.O.C. v. Shell Oil Co.,*
    466 U.S. 54 (1984)........................................................................................18

*Edwards v. Prime, Inc.,*
    602 F.3d 1276 (11th Cir. 2010) ....................................................................15

*Francois v. Miami Dade Cnty., Port of Miami,*
    432 F. App'x 819 (11th Cir. 2011).......................................................... 23, 24

iv

*Garcia v. Baptist Health S. Fla., Inc.*,
    No. 12-23765-CIV, 2013 WL 632963 (S.D. Fla. Feb. 20, 2013) ................23

*Gregory v. Ga. Dep't of Human Res.*,
    355 F.3d 1277 (11th Cir. 2004) ....................................................................23

*Griffith v. Nicholas Fin., Inc.*,
    214 F. Supp. 3d 1215 (N.D. Ala. 2016) ......................................................29

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993)........................................................................................19

*Hester v. Univ. of Ala. Birmingham Hosp.*,
    798 F. App'x 453 (11th Cir. 2020) ..............................................................32

*Holifield v. Reno*,
    115 F.3d 1555 (11th Cir. 1997) ....................................................................32

*Johnson v. City of Shelby*,
    574 U.S. 10 (2014)............................................................................... 20, 21

*Johnson v. Wash. Metro. Transit Auth.*,
    883 F.2d 125 (D.C. Cir. 1989)......................................................................36

*Lewis v. Union City*,
    918 F.3d 1213 (11th Cir. 2019) ........................................... 27, 31, 32

*Maynard v. Bd. of Regents*,
    342 F.3d 1281 (11th Cir. 2003) ....................................................................27

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)................................................................ 13, 16, 26, 27

*Mendoza v. Borden, Inc.*,
    195 F.3d 1238 (11th Cir. 1999) ....................................................................19

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986)............................................................................... 18, 19

*Minch v. City of Chicago*,
    486 F.3d 294 (7th Cir. 2007) ......................................................................30

*Rogers v. E.E.O.C.,*
    454 F.2d 234 (5th Cir. 1971) ......................................................................18

*Rural Int'l Bank Ltd. v. Key Fin. Invest. Grp. LLC*,
    16-22280-CIV, 2017 WL 5891463 (S.D. Fla. Oct. 24, 2017) ....................35

*Scott v. Harris*,
   550 U.S. 372 (2007)........................................................................36

*Smelter v. S. Home Care Servs. Inc.*,
   904 F.3d 1276 (11th Cir. 2018) ....................................................34

*Smith v. Owens*,
   848 F.3d 975 (11th Cir. 2017) ......................................................15

*Sutherland v. Boehringer-Ingelheim Pharm., Inc.*,
   700 F. App'x 955 (11th Cir. 2017)........................................ 19, 22

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002)................................................................ 20, 21

*Thomas v. Dillard Dep't Stores, Inc.*,
   116 F.3d 1432 (11th Cir. 1997) ....................................................31

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ......................................................36

*Vinewood Cap., LLC v. Dar Al-Maal Al-Islami Tr.*,
   541 Fed.Appx. 443 (5th Cir. 2013) ..............................................36

*Waite v. Bd. of Trs. of Univ. of Ala.*,
   No. 2:16-CV-01244-JEO, 2018 WL 5776265
   (N.D. Ala. Nov. 2, 2018) ........................................................ 28, 29

*Walls v. Lowe's Home Ctrs., LLC*,
   789 F. App'x 852 (11th Cir. 2019)................................................18

*Wu v. Thomas*,
   863 F.2d 1543 (11th Cir. 1989) ....................................................24

*Young v. United Parcel Serv., Inc.*,
   575 U.S. 206 (2015)........................................................................33

## Statutes & Other Authorities:

§§ 760.01-760.11, Fla. Stat ................................................................2

Fed. R. Civ. P. 12(b)(6)....................................................................15

Fed. R. Civ. P. 56(a).........................................................................22

## STATEMENT OF THE ISSUES

1.      Whether the district court properly applied the plausibility pleading standard, rather than the notice pleading standard that was abrogated sixteen years ago, and dismissed Ms. Weatherly's hostile work environment claims because she failed allege sufficient facts to support her claims.

2.      Whether the district court correctly granted summary judgment on Ms. Weatherly's national origin claims because Ms. Weatherly failed to exhaust her administrative remedies prior to filing suit.

3.      Whether the district court properly entered summary judgment on Ms. Weatherly's discrimination and retaliation claims when Ms. Weatherly— relying only on her own self-serving, uncorroborated testimony—failed to establish a *prima facie* case of discrimination or retaliation because the undisputed evidence reflects that she did not suffer an adverse employment action, or that she was disparately treated.

#2709783v1-998909.0001

## STATEMENT OF THE CASE

### A.    Nature of the Case

Ms. Weatherly filed this employment discrimination and retaliation action in September of 2019. [Doc. 1]. The case emanates from Ms. Weatherly's roughly ten-week employment with ABC Legal in the fall of 2017. [Doc. 1 – Pg. 2]. Ms. Weatherly, who identifies as Russian and Caucasian, contended that she was the victim of race and national origin discrimination, and subjected to a hostile work environment. [*Id.*]. The district court dismissed Ms. Weatherly's original Complaint, [Doc. 19], and her Amended Complaint [Doc. 45]. Ms. Weatherly then filed an eight-count Second Amended Complaint [Doc. 49], from which the district court dismissed her hostile work environment claims, Counts IV and VIII [Doc. 68 – Pg. 11]. The claims that remained in the Second Amended Complaint, were mirroring federal and state law claims of discrimination (Counts I, II, V, and VI) and retaliation (Counts III and VII) on the basis of race (Caucasian) and national origin (Russian) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2oooe, et seq., and the Florida Civil Rights Act, §§760.01-760.11, Fla. Stat. [Doc. 49]. After discovery was taken, and extensive briefing completed, the district court granted summary judgment in favor of ABC Legal on all of Ms. Weatherly's remaining claims. [Doc. 131]. This appeal followed. [Doc. 132].

**B.  Statement of Facts**

1.  *ABC Legal, and its Policies and Procedures*

ABC Legal is a leading, multi-national service of process and court filing company based out of Seattle, Washington. [Doc. 85-1 – Pg. 1]. During Ms. Weatherly's employment, ABC Legal employed nearly 500 staff members and utilized a network of over 2,000 process servers. [Doc. 85-2 – Pg. 32:1–9]. ABC Legal's human resources ("HR") department promulgates its Employee Handbook detailing its policies for Paid Time Off ("PTO"), medical leave, and other administrative and HR procedures. [Doc. 85-1]. The Employee Handbook is provided to each new employee, including Ms. Weatherly, [*see* Doc. 85-21 – Pg. 1, Ms. Weatherly's Signed Acknowledgment Form], and each employee is subject to the policies and procedures outlined in the Employee Handbook [Doc. 85 – Pg. 7, ¶ 18].

ABC Legal has explicit zero-tolerance policies against harassment based upon any protected status by anyone in the workplace. [Doc. 85-1 – Pgs. 40–43]. The anti-harassment policies are violated if anyone is fired, denied a job, or denied an employment benefit because of a protected class or because the employee complained about harassment or assisted in an investigation of harassment. [Doc. 131 – Pg. 3; Doc. 85 – Pg. 7, ¶ 20]. If an employee complains about harassment in violation of the company's policies, ABC Legal requests that the employee provide

3

details, including the date, location, witnesses, and any other information that may help facilitate the investigation of the alleged harassment. [Doc. 85 – Pg. 27, ¶ 21].

The Employee Handbook sets forth investigatory and conciliatory procedures for addressing allegations of harassment, and explains that findings will be made at the conclusion of the investigation. [Doc. 85-1 – Pgs. 40–43]. ABC Legal shares its findings with the "complaining employee, the alleged harasser, and if appropriate other employees directly concerned with the incident." [*Id.* at Pg. 44.] If ABC Legal finds that unlawful harassment occurred, "prompt and effective remedial action will be taken." [*Id.* at Pg. 35].

With respect to policies governing time off, ABC Legal utilizes an accrual-based paid time off ("PTO") policy. [*Id.* at Pgs. 23–24]. As each employee works, such employee accrues a particular amount of PTO. [*Id*]. The rate at which PTO accrues increases with the employee's length of employment. [*Id.*].

With respect to leaves of absence, employees who do not meet FMLA eligibility requirements—a minimum of one-year employment with ABC Legal—may request approval for a discretionary personal leave of absence. [Doc. 85-1 – Pgs. 26–29; Doc. 85-6 – Pg. 91, Mirkovich Dep.]. The duration of personal leave and job reinstatement is determined by ABC Legal under principles of reasonable accommodation. [Doc. 85-1 – Pg. 26]. PTO, to the extent available, is applied towards an employee's approved leave, otherwise the leave is unpaid. [*Id.*].

4

Personal leave is coordinated with ABC Legal's HR department and must be approved prior to commencement. [Doc. 85-1 – Pg. 26; Doc. 85-5 – Pgs. 82–84, Davis Dep.]. To avail themselves of ABC Legal's discretionary, non-FMLA leave, employees must first complete a personal leave request form and provide details to his or her manager, including duration of the anticipated leave. [Doc. 85-6 – Pgs. 91–92, Mirkovich Dep.]. Discretionary medical leave requests typically require two levels of approval—the employee's supervisor and the HR Director. [*Id.*]. Approval or denial is determined based on the office's business needs and staffing requirements. [*Id.*].

ABC Legal's attendance and punctuality policies place the onus on employees to notify managers of absences within the first hour of a scheduled workday. [Doc. 85-1 – Pg. 14]. The Employee Handbook provides that "if an employee fails to report to work for three consecutive business days without notifying his or her manager, the Company will consider the employee to have voluntarily resigned." [*Id.* at Pgs. 7–8].

2.    *Ms. Weatherly's Employment*

Ms. Weatherly was interviewed and hired by the Dania Beach Office Manager Carlos Melo; her first day of work was August 24, 2017 for a general administrative support role as a Logistics Specialist, a clerical role that required her to sort and scan documents, as well as process incoming documents from courts. [Doc. 131 – Pg. 2].

5

During her ten-week tenure spanning August 24, 2017 through November 1, 2017, [Doc. 49 – Pg. 4, ¶ 14], Ms. Weatherly worked exclusively from ABC Legal's Dania Beach office with her supervisor, Mr. Melo, and a co-worker, Konya Robinson [*Id.* at Pg. 5, ¶ 17]. Various process servers also regularly came into the office to pick up their assignments that Ms. Robinson dispatched. [Doc. 85-2 – Pg. 11:16–21, Melo Dep.]. Ms. Weatherly's time cards demonstrate that Ms. Weatherly had thirteen absences during her ten weeks with ABC Legal. [Doc. 85 – Pg. 9, ¶ 27; Doc. 85-9; Doc. 131 – Pg. 5].[1]

Mr. Melo oversaw day-to-day office activities, which included processing, scanning, and disbursing documents related to the office's case assignments. [*Id.* at Pgs. 10–11]. Mr. Melo supervised Ms. Weatherly and Ms. Robinson without incident, and there were no complaints or disciplinary incidents noted in his, or Ms. Robinson's, personnel files during Ms. Weatherly's employment. [Doc. 85-13, Melo Personnel File; Doc. 85-14, Robinson Personnel File].

Unlike Ms. Weatherly's clerical role as Logistics Specialist, Ms. Robinson's duties as a Partner Support Specialist involved management functions like liaising with process servers, overseeing distribution and dispatch of cases to process servers, utilizing ABC Legal's proprietary lead assignment software—Skye—to

---

[1] Holiday: 9/4; No Show: 9/5, 9/13, 9/14, 9/15, 9/19, 9/20, 10/27; Hurricane Irma: 9/7, 9/8, 9/11, 9/12; PTO: 10/10.

#2709783v1-998909.0001

ensure orders were dispatched and fulfilled, and monitoring process server status. [Doc. 85-3 – Pgs. 11-12, Robinson Dep.; Doc. 85-2 – Pg. 11, Melo Dep.; Doc. 85-4 – Pg. 13:21–25, Onishchenko Dep.]. Ms. Robinson reported to both Mr. Melo and Robert Caylor in ABC Legal's corporate headquarters. [Doc. 85-2 – Pgs. 30:18–25 – 31:1–5, Melo Dep.]. Ms. Robinson was employed by ABC Legal for five years at the time Ms. Weatherly was hired. [Doc. 85 – Pgs. 4, ¶ 5 & 5, ¶ 11]. Ms. Robinson consistently exceeded expectations, received positive performance reviews, and had a spotless disciplinary record during her five years of employment with ABC Legal. [Doc. 85-14, Robinson Personnel File].

On October 30, 2017, Ms. Weatherly sent an email entitled "medical leave question" to ABC Legal's Benefits Specialist, Betty Mirkovich, inquiring: "… I have an unplanned surgery scheduled for some time soon, could be tomorrow or next month due to a health issue that recently came up. Does the company pay medical leave?" [Doc. 85-15 – Pg. 2]. At the time, given the brevity of her employment, Ms. Weatherly had no PTO available as she already used the nominal time she had accrued. [Doc. 85-8]. Ms. Mirkovich indicated that Ms. Weatherly was not eligible for FMLA leave because she had been employed for less than one year, but advised of ABC Legal's discretionary, non-FMLA personal leave policy. [Doc. 85-15 – Pg. 1]. Ms. Mirkovich asked Ms. Weatherly to provide additional information once available. [*Id.*]. Ms. Weatherly responded the next day noting that she was having

joint and muscle pains, hair and skin thinning, and speculated that dust from a nearby construction site may be contributing to these issues. [*Id.*]. Ms. Mirkovich then forwarded the email to the director of Human Resources requesting to contact Mr. Melo to arrange an air-quality test for the Dania Beach office. [Doc. 85-6 – Pg. 8:5–13].

The next and final communication from Ms. Weatherly during her employment with ABC Legal was a November 1, 2017 email addressed to Mr. Melo, with Ms. Mirkovich copied, entitled "medical leave." [Doc. 85-16]. Ms. Weatherly's email read:

> Dear Carlos,
>
> Unfortunately due to health issues I have to take a break from work. In the last month I developed a severe form of arthritis in the entire body (possibly due to [REDACTED]) which makes it impossible to work. I just got a call that I'm scheduled for a surgery within the next couple days and now will be resting and preparing for it. Thank you for your assistance with everything. The office key is on the table and the computer password is: [REDACTED].
>
> Warmly, Anna.

[*Id.*].

As of November 1, 2017, Ms. Weatherly had not applied or been approved for non-FMLA personal leave. [Doc. 85-6 – Pg. 99:21–25, Mirkovich Dep.]. Ms. Weatherly merely stated that she was getting surgery at some unidentified point in time and that it was impossible for her to continue working while turning in her keys

and computer password. [Doc. 85-16]. Mr. Melo took her email at face value and understood it to be a notice of voluntary resignation. [Doc. 85-17 – Pgs. 4–5]. Ms. Weatherly's departure from ABC Legal was processed by HR and coded as a voluntary resignation. [Doc. 85-11 – Pg. 4; Doc. 85-5 – Pg. 90:9–24].

Ms. Weatherly ultimately did not have surgery a few days later; nor did she notify ABC Legal that her surgery had been cancelled. [Doc. 131 – Pg. 16]. Her surgery took place four months later. [Doc. 131 – Pg. 16]. She did not reach out to ABC Legal at all until two weeks after she sent her departing email, on or around November 13, 2017, when she called Ms. Mirkovich upon discovering that her medical benefits were terminated. [Doc. 85-17 – Pg. 1; Doc. 85-6 – Pgs. 109–110, Mirkovich Dep.]. Despite Ms. Weatherly's insistence in the district court and in this Court that she was terminated, she represented in her November 30, 2017 financial affidavit filed in her divorce proceeding that she was "unemployed due to medical condition." [Doc. 85-22 – Pg. 1].

3.    *The EEOC Charge of Discrimination and District Court Proceedings*

Ms. Weatherly filed an EEOC Charge of Discrimination against ABC Legal on August 27, 2018 (the "Charge") for discrimination based on "race" and "retaliation." [Doc. 85-23 – Pg. 1]. The content of her Charge notes that she is a white woman of Russian descent, but does not mention any facts pertaining to

discrimination based on her national origin. [Doc. 85-23; Doc. 131 – Pg. 11]. The EEOC issued a right to sue letter on June 4, 2019. [Doc. 131 – Pg. 8].

Ms. Weatherly commenced this lawsuit on September 4, 2019. [Doc. 1]. Through Motion to Dismiss practice, the district court dismissed Ms. Weatherly's original Complaint, [Doc. 19], and Amended Complaint [Doc. 45].

Ms. Weatherly alleged in her Second Amended Complaint that she was the victim of a hostile work environment, race and national origin discrimination, and retaliation. [Doc. 49]. She contended she observed inappropriate comments in the workplace regarding Caucasian people—specifically, that they were "gringos" and keeping minorities in financial slavery—and Russian people—specifically, that they are "all prostitutes." [Doc. 49 – Pg. 7, ¶ 26]. She plead: "Mr. Melo and Ms. Robertson [*sic*] told the Plaintiff that all Russian people are 'prostitutes.'" [*Id.*]. Apart from this single comment, there are no other allegations in which Ms. Weatherly identified a racially charged comment about Russian people. *See* [Doc. 49 – Pgs. 1–26]. With respect to race, Ms. Weatherly stated: "Mr. Melo and Ms. Robertson [*sic*] frequently and loudly discussed their dislike of 'white people' in general." [Doc. 49 – Pg. 7, ¶ 27]. And that "[t]hey often used the term 'gringos' to describe white people." [*Id.*]. Ms. Weatherly stated these comments were made often, [*Id.*], but did not provide specific facts for how frequently these events occurred during her ten-week

employment, nor whether or how these comments altered the conditions of her employment. *See* [Doc. 49 – Pgs. 1–26].

Regarding retaliation, Ms. Weatherly claimed that she witnessed and opposed discrimination by Ms. Robinson—not against Ms. Weatherly, but—against two Caucasian process servers. [Doc. 49 – Pg. 9, ¶ 39]. Ms. Weatherly alleged she reported such discrimination to Jenny Davis, ABC Legal's Director of Human Resources, [Doc. 49 – Pg. 10, ¶¶ 40–41], and that at some point after this report, she found dog feces smeared on the bumper of her car, and at another point, her tires slashed [Doc. 49 – Pg. 11, ¶ 45]. Finally, Ms. Weatherly contended that she intended to take medical leave and was fired by ABC Legal as an act of racial and national origin discrimination and retaliation. [Doc. 49 – Pgs. 12, ¶ 50–14, ¶ 55].

On ABC Legal's Motion to Dismiss the Second Amended Counterclaim, the district court reviewed the Second Amended Complaint, and concluded, with respect to the hostile work environment claims, that Ms. Weatherly had failed to connect her allegations to any of the requisite factors set forth in *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997). [Doc. 68 – Pgs. 9–11]. And, that she "only offers conclusory allegations as to the frequency and severity of the conduct (referring to the conduct as 'constant' and 'severe') and whether the conduct was physically threatening or humiliating or interfered with Plaintiff's job performance." [Doc. 68

11

– Pg. 10]. The district court then dismissed the hostile work environment claims finding Ms. Weatherly failed to allege a plausible claim. [*Id.*].

Thereafter, the Parties took extensive written and documentary discovery, and conducted seven depositions. [*See* Docs. 85-1–85-24]. ABC Legal moved for summary judgment on the remaining counts providing the district court with extensive briefing, along with twenty-four exhibits comprised of deposition transcripts, personnel files, emails, and detailed documentary evidence regarding Ms. Weatherly's employment, in support of ABC Legal's position. [Doc. 86].

Ms. Weatherly opposed the Motion for Summary Judgment and filed a Statement of Additional Facts, wherein she relied exclusively on her own deposition testimony for seventeen of the twenty-two propositions. [*See* Docs. 97 & 98]. The other propositions were supported by an affidavit Ms. Weatherly secured from Leonard Gartman—the process server she claims Ms. Robinson had discriminated— which was ultimately withdrawn after his deposition revealed that he did not believe the statements in his affidavit to be true, nor based on any direct personal knowledge. [Doc. 105; Doc. 106 – Pg. 1; Doc. 107].[2]

_____

[2] At the time that Ms. Weatherly's Additional Statement of Facts and Affidavit of Leonard Gartman were filed, Leonard Gartman had not been disclosed as a trial witness. [Doc. 103 – Pg. 2]. The parties nonetheless agreed to depose him, wherein he testified that: 1) he had no direct knowledge of any of the averments in his affidavit because they were all based on information told to him by Ms. Weatherly; 2) he did not believe the averments in the affidavit to be true; and 3) he informed Ms. Weatherly's counsel prior to the filing of the affidavit that he did not have

The district court granted summary judgment in favor of ABC Legal on March 10, 2023. [Doc. 131]. As to the national origin claims, the district court concluded that Ms. Weatherly failed to exhaust her administrative remedies because she "did not check the box for national origin discrimination or allege facts in the narrative section of the Charge of Discrimination that could be construed to raise a national origin discrimination claim." [*Id.* at Pg. 11]. The district court observed that Ms. Weatherly only mentioned national origin once in her Charge; specifically, in the opening sentence wherein she states she is a white woman of Russian descent. [*Id.*]. The district court reasoned: "[t]his single reference is insufficient to construe a claim for national origin discrimination. Nor can the Court find that Plaintiff's national origin discrimination claims were like or related to, or grew out of, the racial discrimination claims contained in her Charge of Discrimination." [*Id.*].

As to the race discrimination claims, the district court concluded that Ms. Weatherly failed to establish sufficient evidence to support a *prima facie* case under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), framework. [Doc. 131 – Pg. 19]. Specifically, the district court found Ms. Weatherly: (1) did not suffer an adverse employment action; (2) failed to provide a valid comparator to

---

knowledge of the information averred in the affidavit, nor believed it to be true. [Doc. 106 – Pg. 1]. As a result, ABC Legal moved to strike the affidavit [Doc. 106], and Ms. Weatherly moved to withdraw the affidavit [Doc. 105]. The district court granted Ms. Weatherly's Motion to Withdraw, and then denied ABC Legal's Motion to Strike as moot. [Doc. 107].

#2709783v1-998909.0001

demonstrate disparate treatment; and (3) failed to show that she was treated less favorably based on race, even if her proffered comparator, Ms. Robinson, was valid. [Doc. 131 – Pgs. 13–19].

Regarding the retaliation claims, the district court recognized that Title VII's retaliation provision renders the adverse employment action element broader in retaliation cases than in discrimination cases, but reasoned that Ms. Weatherly's retaliation claims nonetheless failed because she did not suffer an adverse employment action. [Doc. 131 – Pgs. 19–20]. While the district court did not reach the issue of whether Ms. Weatherly engaged in a protected activity, it bears noting that that no witness was able to corroborate any of what Ms. Weatherly alleges occurred, and ABC Legal's documentary records do not contain any complaints from anyone concerning: (1) discriminatory process server assignment practices in the Dania Beach office; (2) discrimination against any white or Russian employees in the Dania Beach office; (3) disparate treatment with respect to use of accrued PTO in the Dania Beach office; (4) discriminatory or retaliatory denial of PTO requests in the Dania Beach office; (5) Ms. Weatherly's tires being slashed; or (6) Ms. Weatherly's vehicle being defaced with feces. [Doc. 85 – Pg. 6, ¶ 16].

From the district court's orders of dismissal and summary judgment, Ms. Weatherly now appeals. [Doc. 132].

14

### C. Standard of Review

This appeal arises from the district court's order granting ABC Legal's Motion to Dismiss as to the Second Amended Complaint's hostile work environment claims (Counts IV and VIII) [Doc. 68], and order granting ABC Legal's Motion for Summary Judgment on the Second Amended Complaint's remaining discrimination (Counts I, II, V, and VI) and retaliation claims (Counts III and VII) [Doc. 131].

This Court conducts a de novo review of the district court's order granting a motion to dismiss for failure to state a claim and order granting summary judgment. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1245 (11th Cir. 2015). "We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6)," taking the "factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Edwards*, 602 F.3d at 1291 (emphasis omitted) (citations omitted). "We review de novo the grant of summary judgment and the denial of summary judgment. *Carithers*, 782 F.3d at 1245. This Court applies the same motion for summary judgment standards as the district court. *See Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

#2709783v1-998909.0001

## SUMMARY OF THE ARGUMENT

This Court should affirm: 1) the district court's dismissal of Ms. Weatherly's hostile work environment claims from her Second Amended Complaint; and 2) the district court's grant of summary judgment in favor of ABC Legal on the Second Amended Complaint's remaining claims of racial discrimination, national origin discrimination, and retaliation.

First, Ms. Weatherly did not plead sufficient facts to state a plausible claim for hostile work environment, and her unpreserved argument that the district court erred by disregarding the long-since abrogated "no set of facts pleading standard" is contrary to law. The pleading standard in the federal judiciary remains governed by *Twombly* and *Iqbal,* which require that a complaint be plausible on its face and bring forth sufficient factual allegations to nudge a claim across the line from conceivable to plausible. The district court correctly applied the sixteen-year-old plausibility standard of *Twombly* and *Iqbal*, and dismissed Ms. Weatherly's hostile work environment claim.

Second, the district court correctly granted summary judgment on the national origin claims because Ms. Weatherly's single mention of being of Russian origin in her Charge did not exhaust her administrative remedies, and the additional facts of discrimination alleged in Ms. Weatherly's Initial Brief do not retroactively remedy the factual deficiencies in her Charge.

Last, the district court properly reviewed the record evidence, applied the *McDonnell Douglas* framework, and granted summary judgment on the discrimination and retaliation claims because Ms. Weatherly could not establish a *prima facie* case of racial discrimination or retaliation. The evidence is uncontroverted. Ms. Weatherly did not suffer an adverse employment action, nor proffer competent evidence of any discrimination. Her failure to do so is fatal to her claims, and her self-serving, uncorroborated evidence fails to remedy this fatality.

## ARGUMENT

**I.  The district court properly applied the plausibility pleading standard, rather than the notice pleading standard that was abrogated sixteen years ago, and dismissed Ms. Weatherly's hostile work environment claims because she failed allege sufficient facts to support her claims.**

Ms. Weatherly failed to allege any facts to plausibly plead a claim for hostile work environment, and the district court properly dismissed Counts IV and VIII of her Second Amended Complaint. To set forth a hostile work environment claim, a plaintiff must allege:

> (1) [Plaintiff] belonged to a protected group; (2) [plaintiff] was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive working environment; and (5) a basis exists for holding the employer liable.

*Walls v. Lowe's Home Ctrs., LLC*, 789 F. App'x 852, 853–54 (11th Cir. 2019). Hostile work environments have been described as those that are "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers. . . ." *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quoting *Rogers v. E.E.O.C.,* 454 F.2d 234, 238 (5th Cir. 1971), *rev'd on other grounds, E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54 (1984)). Further, a hostile work environment exists where "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment. . . .'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).

The severity and pervasiveness of the alleged harassment involves a review of subjective and objective elements that look at: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen*, 121 F.3d at 647; *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). Inappropriate comments in passing typically fall into the category of offensive utterances, and, without more, will not support a claim for relief. *Compare Sutherland v. Boehringer-Ingelheim Pharm., Inc.*, 700 F. App'x 955, 960 (11th Cir. 2017) (finding an unknown number of harassing comments made approximately every six weeks were not sufficiently severe to constitute a hostile work environment where there was no evidence that plaintiff had been physically threatened, publicly humiliated, or unable to perform job responsibilities), *with Meritor*, 477 U.S. at 60 (finding it sufficiently severe and pervasive within the sexual harassment context that a manager made regular sexual advances, forced unwelcome sexual encounters over 40 times, and forcibly raped her on several occasions).

As a threshold issue, Ms. Weatherly argues on appeal for the first time that the district court improperly disregarded the "no set of facts" pleading standard of

*Conley v. Gibson*, 355 U.S. 41 (1957) in dismissing her hostile work environment claim. [IB – Pg. 39]. Because Ms. Weatherly argued under the plausibility pleading standard in the district court, [Doc. 60 – Pg. 2], her argument here to the contrary is waived. *See Burroughs v. Corey*, 647 F. App'x 967, 968 (11th Cir. 2016) (arguments waived where they "either were not raised in the district court or are materially different from the arguments raised in the district court.").

Even if not, her argument has no merit and is contradicted by well-established law. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "the Supreme Court expressly 'retired' the 'no set of facts' pleading standard under Rule 8(a)(2) that the Court had previously established in *Conley*[.]" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 563; *Conley*, 355 U.S. at 45–46). Rather, since 2009, the plausibility pleading standard has governed all civil actions, including discrimination suits. *See id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions,' and it applies to antitrust and discrimination suits alike." (citations omitted)).

To circumvent this deficiency, Ms. Weatherly attempts to argue that when the Supreme Court cited *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) for the proposition that there is no heightened pleading standard for employment discrimination cases, it reverted the

20

pleading standard back to *Conley's* "no set of facts" standard. Ms. Weatherly misinterprets *Johnson*. There, the Supreme Court analyzed the pleading standards under Rule 8(a) governing a complaint's *legal theory*. 574 U.S. at 11. In citing to *Swierkiewicz*, the *Johnson* Court explained that there is no heightened pleading standard in discrimination cases that would require a plaintiff to cite to a specific statute in its complaint to state a claim for relief. *Id.* at 11. Though *Swierkiewicz* applied the *Conley* standard applicable at the time of its issuance, the *Johnson* Court's reliance on *Swierkiewicz* did not overturn *Twombly* and *Iqbal*. Rather, the *Johnson* Court made clear that its inquiry was distinct from the pleading standards in *Twombly* and *Iqbal*, which govern the *factual* allegations required for a complaint to survive dismissal. *Id.* at 12. Indeed, the *Johnson* Court found that the complaint before it had alleged facts sufficient to show that the claim had substantive plausibility under *Twombly* and *Iqbal*. *Id.*

The district court therefore correctly applied the plausibility standard to Ms. Weatherly's claims. Under this standard, Ms. Weatherly failed to plead facts to plausibly show that the alleged harassment was sufficiently severe or pervasive to actionably alter the conditions of her employment. In analyzing the Second Amended Complaint, the district court reasoned:

> Here, Plaintiff fails to sufficiently connect the alleged discriminatory conduct to any of the *Allen* factors. Plaintiff only offers conclusory allegations as to the frequency and severity of the conduct (referring to the conduct as

21

> "constant" and "severe") and whether the conduct was physically threatening or humiliating or interfered with Plaintiff's job performance. Specifically, Plaintiff fails to plead facts that would establish the alleged comments about white or Russian people occurred with such frequency that they plausibly interfered with Plaintiff's job performance. Plaintiff claims that the employees of ABC Legal "often" used the term "gringos" to describe white people, and a singular instance in which either Mr. Melo or Ms. Robertson stated Russian people are "prostitutes." ECF 49 ¶ 26, 27.

[Doc. 68 – Pg. 10]. The district court is correct. While the comments Ms. Weatherly identifies are certainly inappropriate if true, they do not suggest an outright abusive and hostile work environment filled with intimidation and ridicule. *See, e.g., Sutherland*, 700 F. App'x at 960. Ms. Weatherly failed to connect the comments to the *Allen* factors, and thus failed to state a claim for relief.

Therefore, the district court properly dismissed Ms. Weatherly's hostile work environment claims from her Second Amended Complaint.

## II. The district court correctly granted summary judgment on Ms. Weatherly's national origin claims because Ms. Weatherly failed to exhaust her administrative remedies, and, regardless, summary judgment is appropriate on the national origin claims because Ms. Weatherly did not suffer an adverse employment action necessary to support a *prima facie* case of discrimination of any type.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2023). The moving party

bears the burden of proving that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. A non-moving party cannot rely on conclusory, self-serving, or uncorroborated allegations, legal conclusions, conjecture, or evidence that would be inadmissible at trial to prove that retaliation motivated an adverse employment action. *Avirgan v. Hull*, F.2d 1572, 1577 (11th Cir. 1991).

   **A.   Ms. Weatherly did not exhaust her administrative remedies prior to filing her national origin discrimination claims because her Charge of Discrimination did not allege facts that could be construed to raise a national origin claim.**

Before a plaintiff can pursue a Title VII discrimination claim, she must first exhaust her administrative remedies. *Francois v. Miami Dade Cty., Port of Miami*, 432 F. App'x 819, 821 (11th Cir. 2011). The same is true to allege violations of the Florida Civil Rights Act. *Garcia v. Baptist Health S. Fla., Inc.*, No. 12-23765-CIV, 2013 WL 632963, at *2 (S.D. Fla. Feb. 20, 2013). The purpose of the exhaustion requirement is to allow the EEOC an initial opportunity to investigate alleged discriminatory practices and obtain voluntary compliance through conciliatory efforts. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). Claims are allowed only if they "amplify, clarify, or more clearly focus the allegations in the EEOC complaint." *Id.* at 1279–80. "Allegations of new acts of

discrimination, offered as the essential basis for the requested judicial review are not appropriate." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989). The scope of a judicial complaint is exclusively limited to the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *Francois*, 432 F. App'x at 821.

The district court correctly found that Ms. Weatherly's single mention of national origin in the opening line of her Charge stating that she is a white woman of Russian descent was insufficient to construe the Charge as being based upon national origin, or that her national origin claims grew out of the racial discrimination claims that were detailed in her Charge. On appeal, Ms. Weatherly does not identify any facts or language in the Charge to contend otherwise, but instead focuses on facts *extraneous* to the Charge. [*See* IB – Pgs. 26–27, § 2] (focusing on ABC Legal's response rather than the content of Ms. Weatherly's allegations). For example, Ms. Weatherly's Initial Brief states that Nadya is of Russian heritage; however, while Nadya's name is mentioned in the Charge of Discrimination, her Russian heritage is not. As observed by the district court:

> In her Second Amended Complaint, Plaintiff alleges that she and Ms. Onishchenko have the same national origin: Russia. [ECF No. 49 ¶¶ 8, 26, 66, 95]. The Second Amended Complaint's only specific allegation of national origin discrimination is that "Mr. Melo and Ms. Robertson told the Plaintiff that all Russian people are 'prostitutes.'" Id. at ¶ 26. As the Charge of Discrimination does not contain that allegation or any other specific references to

> national origin discrimination, the Court cannot find that
> Plaintiff's national origin claims relate to or grew out of
> her race discrimination claims.

[Doc. 131 – Pg. 11]. Ms. Weatherly cannot point to any facts within the Charge to refute this reasoning, and none exist. This Court should therefore affirm the district court's proper grant of summary judgment in favor of ABC Legal because Ms. Weatherly's single mention in her Charge that she is of Russian origin does not allege sufficient facts of national origin discrimination.

**B.  Even if Ms. Weatherly had exhausted her administrative remedies, summary judgment should not be reversed because Ms. Weatherly failed to establish a *prima facie* case of discrimination.**

Even if this Court finds that Ms. Weatherly exhausted her administrative remedies prior to bringing her national origin claims, this Court should still affirm summary judgment on Ms. Weatherly's national origin claims. Ms. Weatherly cannot establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework, which is fatal to her race and national origin claims alike, even if her national origin claims survived the affirmative defense of failure to exhaust administrative remedies. *See supra* § III (explaining that Ms. Weatherly failed to demonstrate that she suffered an adverse employment action, failed to provide a comparator capable of demonstrating disparate treatment, and failed to adduce evidence that any purported disparate treatment was attributable to discrimination).

This Court should therefore affirm the district court's grant of summary judgment on the national origin discrimination claims.

### III. The district court properly entered summary judgment on Ms. Weatherly's race discrimination and retaliation claims because Ms. Weatherly failed to establish a *prima facie* case of racial discrimination or retaliation.

The district court properly entered summary judgment on Ms. Weatherly's race discrimination and retaliation claims because Ms. Weatherly failed to establish a *prima facie* case of race discrimination and retaliation under *McDonnell Douglas Corp.*, 411 U.S. at 802. Ms. Weatherly's arguments in Sections 3.A-B, 4.A-B, 4.A-E (*sic*), and 5.A-B(1-2) of her Initial Brief are organized into a litany of arguments that are subsumed by the single dispositive issue of whether the district court properly granted summary judgment because Ms. Weatherly failed to establish a *prima facie* case of discrimination or retaliation. For simplicity, because the racial discrimination and retaliation claims rose and fell on the same ultimate finding by the district court that Ms. Weatherly failed to establish a *prima facie* case for an adverse employment action, ABC Legal responds in this Section of the Answer Brief to all of Ms. Weatherly's arguments in Sections 3.A-B, 4.A-B, 4.A-E (*sic*), and 5.A-B(1-2) of her Initial Brief.

To establish a *prima facie* claim for discrimination under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of alleging: (1) he or she was a member of a protected class; (2) he or she was qualified for the job; (3) he or she

26

suffered an adverse employment action; and (4) he or she was "treated less favorably than a similarly situated individual outside [his or her] protected class." *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802). The burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for its actions," only if a plaintiff has first established a *prima facie* claim for discrimination. *Lewis v. Union City*, 918 F.3d 1213, 1221 (11th Cir. 2019).

The district court correctly found that Ms. Weatherly failed to establish that she suffered an adverse employment action or was treated disparately because of her race, and entered summary judgment on her racial discrimination and retaliation claims. Notwithstanding Ms. Weatherly's extensive dedication in her brief to the "facts" she argues support her claims for discrimination and retaliation, [IB – Pgs. 31–54], the record is void of any evidence to create a genuine issue of material fact on either of her claims. For the reasons set forth below, the district court's grant of summary judgment in favor of ABC Legal should therefore be affirmed.

## A.   Ms. Weatherly did not suffer an adverse employment action.

The district court did not err in finding  Ms. Weatherly had not suffered an adverse employment action because she failed "to establish that the statements and conduct of ABC Legal Services, LLC's employees constituted an intent to sever the employment relationship between [Ms. Weatherly] and the company." [Doc. 131 –

Pg. 17]. Correctly comparing this case to *Waite v. Board of Trustees of University of Alabama*, No. 2:16-CV-01244-JEO, 2018 WL 5776265 (N.D. Ala. Nov. 2, 2018), the district court reasoned that ABC Legal did not terminate Ms. Weatherly. Rather, ABC Legal had "attempted to accommodate and instruct [Ms. Weatherly] on how to request leave," but, "[i]nstead of providing the requested information or making a request for leave, [Ms. Weatherly] stopped working for more than three consecutive business days. Under these circumstances, a reasonable person in ABC Legal Services, LLC's position would have understood that [Ms. Weatherly] voluntarily resigned." [Doc. 131 – Pg. 17].[3]

The record reflects ABC Legal did not, through its words or actions, convey an intent to terminate the employment relationship with Ms. Weatherly, but rather, reasonably believed Ms. Weatherly had resigned. Ms. Weatherly—a ten-week employee with thirteen absences—emailed her supervisor stating she was sick and it was "impossible" for her to work. She provided her computer password, thanked him for everything, and stated that she was leaving her keys on the desk. Ms. Weatherly made no mention of a return to work, and she acted consistent with the

---

[3] The district court also found that Mr. Melo's assignment to Ms. Weatherly of "onerous document scanning and data entry" tasks was not an adverse employment action because Ms. Weatherly's Second Amended Complaint specifically pleads that her job responsibilities included "handling mail, scanning documents and bar codes into a computer." [Doc. 131 – Pg. 14]. Ms. Weatherly does not seem to challenge this finding on appeal. Even if she had, the record speaks for itself.

fact that she resigned by not calling or checking in with anyone for two weeks, even after her surgery—initially scheduled "in a few days" of her initial email—was cancelled. Like in *Waite*, the record reflects that Ms. Weatherly's decision to leave can only be characterized as a voluntary resignation of her position as a matter of law. *See Waite*, 2018 WL 5776265, at *10–12 (finding that employer had not terminated plaintiff when she took an indefinite leave of absence and employer did not attempt to sever their employment relationship).

Notwithstanding, Ms. Weatherly argues this case is akin to *Griffith v. Nicholas Financial, Inc.,* 214 F. Supp. 3d 1215 (N.D. Ala. 2016). There, however, following a series of tense exchanges surrounding a performance review, the plaintiff's supervisor told the plaintiff to "get [her] shit and leave." *Id.* at 1225. The plaintiff accordingly packed her bags and left the office under the impression that she was fired. *Id.* She called human resources the same day and was informed that her insurance benefits would be terminated the next day. *Id.* at 1223. Though Nicholas Financial argued the plaintiff had only been sent home for the day and voluntarily resigned, the court found that "[o]n this record, the [c]ourt cannot conclude as a matter of law that [plaintiff] voluntarily quit." *Id.* at 1226.

There is simply nothing in the record here to support Ms. Weatherly's argument. Unlike in *Nicholas Financial*, no one told Ms. Weatherly to leave, nor was she instructed to take any of her belongings at any point. To the contrary, the

29

undisputed evidence reflects that Ms. Weatherly, not ABC Legal, made the decision for her to leave and turn in her keys. Ms. Weatherly contacted HR to ask about medical leave and was informed that she was not eligible for FMLA leave. Ms. Weatherly could have applied for personal leave as outlined in the Employee Handbook, but never did. Ms. Weatherly instead sent an email to her supervisor stating that it was "impossible" to work. Ms. Weatherly turned in her keys and computer password thereafter, without having applied for leave. Thus, Ms. Weatherly—not ABC Legal—severed the employment relationship. *See also Minch v. City of Chicago*, 486 F.3d 294, 303 (7th Cir. 2007) ("Being fired [involves] . . . the employer unilaterally terminat[ing] the employment relationship.").

Moreover, Ms. Weatherly's argument that ABC Legal should have known that she intended to take a temporary leave when she left does not disturb this analysis. First, Ms. Weatherly's argument is directly contradicted by Ms. Mirkovich's email. Ms. Mirkovich responded to Ms. Weatherly's leave-inquiry email indicating that Ms. Weatherly was *not* eligible for medical leave. Ms. Mirkovich advised her of ABC Legal's discretionary personal leave policy while requesting additional information. ABC Legal's discretionary personal leave policy is also found in Employee Handbook that Ms. Weatherly received only a few weeks earlier. [*See* Doc. 85-21 – Pg. 1]. Ms. Weatherly never applied for, much less was approved for, any personal leave of absence, let alone an indefinite one. There was

therefore no reason ABC Legal should have known Ms. Weatherly intended to return after leaving her position. Second, even if not, Ms. Weatherly's subjective intent does not create a material issue of fact. *See Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1434 (11th Cir. 1997) ("The case law makes clear that the inquiry as to whether actual termination has occurred involves an analysis of the *employer's* intent." (emphasis added)). As she did in the district court, Ms. Weatherly fails to point to any evidence reflecting an intent by ABC Legal to terminate Ms. Weatherly, and indeed, none exists. To the contrary, the evidence objectively reflects that Ms. Weatherly resigned from ABC Legal on November 1, 2017, even if that was not her subjective intent.

Accordingly, the district court did not err in finding Ms. Weatherly did not suffer from an adverse termination.

**B.    Ms. Weatherly failed to establish that she was disparately treated.**

The district court, properly applying *Lewis,* 918 F.3d at 1218, concluded that Ms. Robinson was not a valid comparator, and that, "[e]ven if Ms. Robinson was similarly situated to Plaintiff, Plaintiff fails to show that she was treated less favorably based on race." [Doc. 131 – Pg. 17].

A plaintiff must establish that she is "similarly situated in all material respects" to the proffered comparator. *Lewis,* 918 F.3d at 1218. A comparator should have (1) engaged in the same basic conduct; (2) been subject to the same

employment policies; (3) been under the jurisdiction of the same supervisor; and (4) shared a similar employment history to the plaintiff. *Hester v. Univ. of Ala. Birmingham Hosp.*, 798 F. App'x 453, 457 (11th Cir. 2020). While comparator evidence is essential to a plaintiff's *prima facie* case of disparate treatment discrimination, different treatment of one who is not similarly situated is irrelevant to a disparate treatment claim. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Ms. Weatherly argues that she and Ms. Robinson "are the same however the relevant characteristics." [IB – Pg. 38]. The argument is unavailing for the reasons articulated by the district court:

> Unlike [Ms. Weatherly], Ms. Robinson reported to Mr. Melo and Robert Caylor from the company's Seattle office. [Ms. Weatherly] and Ms. Robinson also had different job titles, performed other duties, and were subject to different PTO accrual rates. Ms. Robinson's duties involved liaising with process servers, overseeing the distribution and dispatch of cases to process servers, monitoring process servers, and ensuring orders were dispatched and fulfilled. [Ms. Weatherly]'s job entailed none of these duties. These material differences demonstrate that Ms. Robinson was not similarly situated to [Ms. Weatherly].

[Doc. 131 – Pg. 18].

Ms. Weatherly also argues that she can survive summary judgment under *Lewis*, 918 F.3d at 1185, even in the absence of a valid comparator, by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer

intentional discrimination." [IB – Pg. 39]. Ms. Weatherly does not, however, present a detailed mosaic of such evidence. As explained by the district court:

> [Ms. Weatherly] argues that Mr. Melo allowed Ms. Robinson to take time off on every available day and that Ms. Robinson took longer lunch breaks than permitted. [ECF No. 98 at 8]. [Ms. Weatherly] further alleges that Mr. Melo denied all her requests to use earned PTO and that Mr. Melo did not communicate with Plaintiff at all during the last month of her employment with ABC Legal Services, LLC. *Id.* However, this evidence does not establish that Ms. Robinson, a Black employee, was treated more favorably because she was Black. [Ms. Weatherly]'s vague, conclusory allegations of disparate treatment fall short of creating "a genuine dispute as to whether [ABC Legal Services, LLC] provided more favorable treatment to at least some employees whose situation cannot reasonably be distinguished from [Ms. Weatherly's]."

[Doc. 131 – Pg. 19].

Ms. Weatherly does not address this part of the district court's ruling, but instead contends that "[t]here is evidence in the record as to timing, ambiguous statements, better treatment of Ms. Robinson and, especially, evidence that the Defendants' [*sic*] justification that Ms. Weatherly quit her job is pretextual …" [IB – Pg. 39.

In this Court, as in the district court, Ms. Weatherly does not present a convincing mosaic of circumstantial evidence that Ms. Robinson was treated more favorably *because* she was Black, or *because* Ms. Weatherly was Russian or Caucasian. *Cf. Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015) (finding

there was a genuine issue of fact as to whether employer provided more favorable treatment to some non-pregnant employees where the plaintiff's employer had forbidden her from returning to work because of her pregnancy, but the employer's collective-bargaining agreement expressly promised to accommodate employees that suffer from on-the-job injuries, permanent disabilities, and those who had lost their DOT certifications).

Accordingly, the district court did not err in finding Ms. Weatherly did not establish that she was disparately treated based on race.

**C.  The district court correctly granted summary judgment on Ms. Weatherly's retaliation claims because Ms. Weatherly did not suffer an adverse employment action.**

As explained above in Section II.b and III.a of this Answer Brief, because the district court properly concluded that Ms. Weatherly did not suffer an adverse employment action, Ms. Weatherly cannot establish a prima facie case of national origin or racial discrimination. The same is true for retaliation. Like discrimination claims, courts "analyze retaliation claims that are based on circumstantial evidence according to the *McDonnell Douglas* burden shifting framework." *Smelter v. S. Home Care Servs. Inc*., 904 F.3d 1276, 1293 (11th Cir. 2018). To establish a *prima facie* claim of retaliation, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Ch. 7 Tr. v.*

*Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012) (internal quotation marks and citation omitted). As observed by the district court, "[a]lthough the analysis for a Title VII retaliation claim is similar to a racial discrimination claim, the scope of the adverse action element is broader in retaliation cases than in discrimination cases." [Doc. 131 – Pg. 20 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63-64 (2006))].

Absent an adverse employment action, the district court properly granted ABC Legal summary judgment on the retaliation claims. *See* [Doc. 131 – Pg. 20 ("Because there are no genuine issues of material fact and Plaintiff has not met her burden to establish a *prima facie* claim of retaliation, the Court finds that summary judgment in favor of Defendants is appropriate on Plaintiff's retaliation claims (Counts III and VII).")].

**D. This Court should affirm the district court's order granting summary judgment on all the discrimination and retaliation claims because Ms. Weatherly failed to present sufficient to create a genuine issue of material fact.**

As a final point, on *do novo* review, this Court could affirm the district court's grant of summary judgment on the basis that Ms. Weatherly's uncorroborated self-serving testimony cited throughout her Initial Brief is insufficient to create a genuine issue of material fact.

As summarized in *Rural International Bank Ltd. v. Key Financial Investment Group LLC*, 16-22280-CIV, 2017 WL 5891463, at *5 (S.D. Fla. Oct. 24, 2017):

A party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario." *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Tr.*, 541 Fed.Appx. 443, 447 (5th Cir. 2013) (deposition testimony and declaration was not enough to establish genuine issue of fact when contract language and previous contract drafts belied contentions in declaration); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Johnson v. Washington Metro. Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.").

Moreover, "[when] the 'opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, [the] [C]ourt should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added) (citations omitted). "If the record does not blatantly contradict the nonmovant's version of events, the court must determine 'whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.'" *AIM Recycling of Fla., LLC v. Metals USA, Inc.,* Case No. 18-cv-60292, 2020 WL 209860, at *13 (S.D. Fla. Jan. 13, 2020) (citations omitted).

The only evidence Ms. Weatherly relied upon to suggest there are disputed issues of fact was her own self-serving testimony and the affidavit of Leonard

Gartman, [Doc. 97]—the latter of which she withdrew because Mr. Gartman had no personal knowledge of the averments in the affidavit, nor believed them to be true. [*See* Docs. 105 – 107]. Further, Ms. Weatherly's testimony is uncorroborated by any of the communications, six deposition transcripts, personnel files, or other evidence in the record. Her testimony, standing alone and in contrast to every other piece of evidence in the case, is insufficient to create a genuine issue of material fact.

For example, Ms. Weatherly claimed that she reported discrimination in the workplace; however, the record reflects otherwise. Ms. Davis led ABC Legal's HR department with twenty years of relevant experience, and was in charge of receiving, investigating, and handling all personnel complaints for ABC Legal. Ms. Davis unequivocally testified that Ms. Weatherly never reported anything to her, let alone any incidents of discrimination. Had Ms. Weatherly done so, Ms. Davis testified it would have set into action a chain reaction of investigation, communications about any such complaint, documentation in personnel files, and all other processes necessary to respond to an employee's report of discrimination or harassment within the company. [Doc. 85 – Pg. 8, ¶ 22; Doc. 85-5 – Pgs. 75–77].

All five individuals from ABC Legal, including Ms. Onishchenkso and Ms. Davis—whom Ms. Weatherly claims she directly reported her complaints to— uniformly testified that they had no recollection of any complaints of discrimination from Ms. Weatherly, and that upon reviewing the incendiary allegations lodged by

Ms. Weatherly, they most certainly would have remembered such a report, because it would have generated an investigation. [Doc. 85 – Pgs. 6, ¶15–7, ¶17 & 8, ¶22]. There was, however, no investigation. Further, there are no internal emails at ABC Legal discussing the topic, nor any comments or notations in the personnel files of Ms. Robinson or Mr. Melo. There is accordingly no evidence to suggest this report occurred or was relayed to Mr. Melo or Ms. Robinson. [Doc. 85-2, Melo Dep. – Pgs. 29, 42: 21 ("Were you ever made aware of a complaint during Ms. Weatherly's employment about the way Ms. Robertson [sic] was handling lead assignments? A. I was not."); Doc. 85-3 – Pg. 36, Robinson Dep. ("Q. Were you ever made aware of any complaint about treating anyone with – you treating anyone in a discriminatory manner at ABC? A. No")]. Simply put, there is no evidence to support Ms. Weatherly's testimony that she reported discrimination to ABC Legal, nor that the individuals she claims retaliated against her ever knew of such a report, and there would be evidence had either event occurred.

Because the only evidence in the record to support Ms. Weatherly's arguments is her self-serving, uncorroborated testimony, this Court should affirm the district court's order granting summary judgment.

## **CONCLUSION**

For the reasons discussed above, this Court should affirm the district court's order granting dismissal of Ms. Weatherly's hostile work environment claims and order granting summary judgment of Ms. Weatherly's remaining discrimination and retaliation claims because all of Ms. Weatherly's claims suffer from pleading and evidentiary fatalities that cannot be remedied on appeal.

Ms. Weatherly's Charge of Discrimination fails to allege a claim of national origin discrimination, and the facts she raises on appeal cannot retroactively correct this deficiency. Likewise, Ms. Weatherly's attempts to paint her voluntary resignation as a termination by ABC Legal are directly contradicted by her own actions and vitiate any possibility that she suffered an adverse employment action to establish her claims of race discrimination and retaliation. There is no evidence that Ms. Weatherly was terminated. Further, there is no evidence that Ms. Robinson, who had noncomparable job duties, was treated more favorably because of her race. Absent having suffered an adverse employment action or disparate treatment, Ms. Weatherly's race (and, for the same reasons, national origin) discrimination and retaliation claims fail. Ms. Weatherly's self-serving, uncorroborated testimony does not disturb this analysis. Therefore this Court should affirm the district court's order of dismissal and order granting summary judgment in favor of ABC Legal.

DATED: October 30, 2023    Respectfully submitted,

**TRIPP SCOTT, P.A.**
*Attorneys for Defendant/Appellee*
*/s/ Seth J. Donahoe*
110 SE 6th Street, 15th Floor
Fort Lauderdale, Florida 33301
Phone: (954) 525-7500
Fax: (954) 765-8475
SETH J. DONAHOE
sjd@trippscott.com
Florida Bar No.: 1004133
JENNIFER H. WAHBA
Florida Bar No.: 1010093
jmh@trippscott.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the Brief contains 9,201 words, excluding the parts of the Brief exempt by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4. This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was drafted using Microsoft Word, Times New Roman 14-point typeface.

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October 2023, I electronically filed this Motion with the Clerk of Court using the CM/ECF system, which will electronically serve the Motion on all counsel of record.